Good morning, everyone. We have six cases on our calendar this morning. We will take a break after the third case, which is Morales v. Herrera. Our first case this morning is Did I pronounce the name correctly? Yes, Your Honor, better than I could. Good morning. May it please the Court, my name is Ronald D. Ritchie on behalf of the Petitioner. Co-Counsel Bernadette McGuire is sitting at the Council's table. We are here today because the Board of Immigration Appeals committed gross errors requiring reversal by this Honorable Court. The primary general issue is that the substantial evidence compels this Court to reverse. First, and one of the primary reasons why the Board messed up, was because the substantial evidence shows that the Board erred in sustaining the adverse credibility finding of the immigration judicial engraved errors. One, it admitted and relied upon the inherently unreliable asylum officer's credible fear interview notes. As the Seventh Circuit has held, such notes are not verbatim and they are inherently unreliable. The Petitioner is not given the opportunity or the asylum applicant is not given the opportunity to explain beyond answering briefly the questions. Also the asylum officer, or sorry, the asylum applicant, and in this case the Petitioner, was detained throughout that. Counsel, was the notes argument made before the BIA? Yes, they were, Your Honor. And we cited to the Seventh Circuit case. This Court hasn't specifically ruled about the admissibility of asylum officer's notes. What is the evidentiary test for the admissibility of those notes? What is the standard for the admissibility? Well, if there were reliable. And you had the opportunity to challenge that reliability. In fact, he testified that it wasn't reliable. So that issue was fully presented, wasn't it, to the hearing examiner? Well, the counsel argued that they were not reliable. For one thing, the asylum officer who prepared those notes was not present. It says on the heading of the report itself that they are not verbatim. They're basically a summary of the asylum officer's interpretation of the questions and answers of the Petitioner. And so they were challenged, Your Honor. I mean, that was my point. They were challenged and determinations were made. What's our standard of review on something like that? Well, the standard would be, Your Honor, whether they are prejudicial. And, you know, does the substantial evidence support that finding, the adverse credibility finding? Is it that or is it that no reasonable finding could have been to the contrary? Well, yes. Yes. All right. So that's a, that's a, you would acknowledge that that's a pretty high standard. That is. That is. And we believe that this Court should, should follow the Seventh Circuit's lead in finding that those notes are not reliable. Does the Seventh Circuit say that the notes are not even admissible? Or do they simply say that they are admissible, but they are challengeable by testimony to the contrary? I believe it's the latter, Your Honor. So isn't that what happened here? Yes. Yes. But the Board didn't interpret it correctly. It didn't, it didn't, you know, the judge below had said, well, I'm going to admit those asylum officers' notes. Okay. And I'm going to say, but not as, but only as rebuttal evidence. But it wasn't used as rebuttal evidence. It was never brought up on direct. Asylum officers' notes or a lot of the questions that the government DHS attorney asked on cross, none of that was brought up on direct. So those asylum officers' notes were not admitted for the purpose that the immigration judge said that he was going to admit them. Well, weren't they admitted for the purpose of impeachment? Well, that's what the judge said. That's why they were being admitted. Yeah. You don't think it was, you don't think those notes were used to impeach his testimony? No. I think they were used to impeach other people's parties. Well, other people testified for him on his behalf, which is impeachment, but also I thought for him as well, but it doesn't much matter, but who was being impeached, but I thought the purpose of those notes was to impeach testimony before the hearing examiner. Yes, that was the purpose. And yes, they were used to attempt to impeach. And impeachment can come in any time. It can come in on the direct or the rebuttal, depending on when the evidence comes in that you're trying to impeach. Yes, I agree. But in this case, the petitioner testified consistently throughout. He gave a detailed testimony. The only really impeachment came about, came relating to other people's affidavits, statements, medical report. And he was one, I don't think it's fair and reasonable to hold the petitioner responsible for statements that aren't prepared by other individuals. He didn't even have a chance to review them until shortly before the hearing. He's been detained throughout. He didn't have an opportunity to look at those statements, medical reports that weren't prepared by other individuals and received by his sister and then given to the lawyer and submitted to the court. Well, is it your contention that inconsistencies in the uncle's and the sibling's statements can't be considered in assessing the credibility of the application? Well, I would say that they could be, but not assessing the credibility of the petitioner himself. His application, I don't think it's fair, was consistent with his testimony. It's only other individuals' statements or documents that had initially had, apparently had an error and then they were all revised from his brother, from his uncle, from the medical clinic. A second version was submitted. Well, why if you have statements from the sister and the uncle and documents from the hospital that vary from his testimony, why isn't that relevant to his credibility? Well, the petitioner was credible. Okay. His testimony never swayed. It was never inconsistent. It was consistent with his application. Well, does consistent equate with it being correct, accurate and honest? Just because it's consistent doesn't mean it's correct. Yes. And if you have testimony or statements from others that undermines that testimony, why couldn't the IG or the J consider that in assessing his credibility? Well, I think the judge could because the judge is required to look at the totality of the circumstances, but I think the judge should not take into account who prepared these statements. You know, that there was a second version submitted. There was, if you will, a corrected version submitted for all the statements that were prepared by others. The judge didn't take into account the sister of the petitioner who had put, you know, made errors in her asylum application that she had suffered from, had and does suffer from post-traumatic stress disorder. The judge acknowledged that she suffered from that, but then seemed to not accept that acknowledgement in considering the sister's testimony or her asylum application. Actually, her testimony, she's the only one that testified in support of the petitioner's live testimony. Her testimony and the petitioner's testimony were consistent, their testimony. The only discrepancy, if you will, or inconsistency is regarding her asylum application, which she testified and she had prepared that she was suffering still from post-traumatic stress disorder. I understand that argument, but doesn't that pull us into the business of weighing the evidence? Well, I think we have, I think the court in a way must do that because you have to determine whether the substantial evidence supports the BIA's factual findings and adverse credibility finding, the determination is a factual finding. And if the substantial evidence does not support that, then the board was wrong in sustaining the immigration judge's findings. We also have in this case where the board and the immigration judge below failed to consider independent probative evidence that supported the petitioner's claim about persecution of individuals similarly situated to him. The judge didn't consider that at all in his decision. And the board also failed to consider that because the board said, well, the judge made an immigration, made an adverse credibility finding, so we'll leave it at that. That then we don't really have to look at other evidence. Well, that's inconsistent. That's contrary to the law. A judge and the board has to look at independent probative evidence that even assuming argument over the petitioner's testimony or application was not credible, if there's independent probative evidence to support his claim, they should have ruled accordingly. What's your best authority for that? About? If you have an adverse credibility determination, but there's other evidence that would support relief, relief can still be granted. Do you have authority for that? Yes. May I bring that up on rebuttal? Sure. Because if I can see you. Good morning. May it please the court. Lisa Morinelli on behalf of the Attorney General. The court should deny this petition for review because the record does not compel the conclusion that the petitioner was credible. The agency identified numerous inconsistencies in Buma's testimony and his documentary evidence regarding key aspects of his claim, including the members of his family, when he was arrested and detained, when he was hospitalized, and where he went after he was released from the hospital. Because the record does not compel a contrary conclusion, this petition for review should be denied. Are all of those material? I mean, some of those facts that struck me when I was reading the briefs are kind of tangential to the main issues of where he was, which hospital. So now others, other things were more important, whether, in fact, he was a member of SCNC or not, and his brother being killed. Some of those things are more material, but aren't some of those things you recited kind of not terribly important? Under the Real ID Act, the immigration judge when assessing the credibility of the applicant can look to any inconsistency, whether or not it is material or otherwise known as goes to the heart of the applicant's claim. In this case, the immigration judge did cite to a number of inconsistencies between the petitioner's statement and the documentary evidence. So there are some that may seem more significant than others, but where in this case we have a number of inconsistencies, the record does not compel the conclusion that the agency aired. Is a finding that the are not credible. Nevertheless, the other evidence convinces me that the tests are met, and I'm going to grant you relief. Is a non-credibility finding fatal or just a factor? In this particular case, the credibility determination was fatal to the applicant's claim. There could be a case in which the immigration judge would determine that there were credibility issues, but that there were other corroborating evidence that would support the applicant's claim. However, in this case, the petitioner has not identified such independent corroborating evidence. And you're saying that in part because the hearing examiner not only concluded that he wasn't credible, but that his main supporter, the sister, was not credible as well. That's right. Did you make any credibility determinations about the brother or about Uncle Nye, Brother Divine and Uncle Nye? There was not a specific credibility determination about the affidavits that were provided from Petitioner's uncle and Petitioner's brother. However, what was between those statements and what Petitioner testified to in the immigration court? So he did then make a determination of credibility saying that those two people, Uncle Nye and Brother Divine or Divine, their affidavits did not square with other facts in the record? They did not square with the Petitioner's testimony in immigration court. For example... So that's ambiguous whether that's a credibility determination about the Petitioner or a determination of credibility about the other people. The focus here for the immigration judge is the credibility determination of the Petitioner because it's his burden to present a credible claim. And he submitted this evidence from his uncle and his brother to support the claim for relief. So where that evidence was inconsistent with what he testified to in immigration court, it caused the immigration judge to question whether or not he was presenting a credible claim for asylum. Well, I thought one of the problems the immigration judge had with the uncle's affidavits, for example, is that there were two. And one was different from the other and that that was an inconsistency. Is it appropriate to impute that inconsistency to the Petitioner's credibility? Yes, it is appropriate because Petitioner was the proponent of this evidence. And he was the one that brought forth the evidence to the immigration judge. So where he submitted affidavits that were inconsistent, that was a reasonable, it was something for which the immigration judge caused him to question what actually happened. What are the facts of this case? Well, I'm getting back to the materiality issue that was raised a few minutes ago. What's an inconsistency that was particularly troubling here? One inconsistency that was particularly troubling for the immigration judge in reference to the affidavits submitted by Petitioner's uncle was what happened after he was submitted from the hospital? Did he leave Cameroon immediately or did he wait for four or five months in Cameroon? That was one inconsistency that came to light when the immigration judge was looking at the affidavits from Petitioner's uncle. And Petitioner's uncle allegedly was the individual that was instrumental in helping the Petitioner flee the country. How does that undermine his credibility as to whether he was arrested and beaten on two occasions for his political views? Is there really anything that contradicts that basic narrative? When the immigration judge is assessing the evidence, he's looking at the totality of the circumstances and whether or not the Petitioner presented a consistent claim for the whole claim. The uncle's statement was not inconsistent with regard to the alleged treatment that he received in Cameroon, but the inconsistency that was identified by the immigration judge related to what happened after he was released from the hospital and his escape from Cameroon. I'm sorry, but why does that matter? I'm just asking the same question. Why does it matter the circumstances of his departure? It matters because there were allegedly two people that were involved with helping Petitioner escape from the country, his uncle and the Petitioner, and they both described different circumstances about how that happened. It caused the immigration judge to question whether or not that's actually how the Petitioner left the country. But why does that matter? I mean, I guess I'm just repeating Judge Matheson's question, but the actual arrests and the beatings, those have not been questioned. You agree with that? There was not a, correct, there was not an inconsistency identified about that, no. Okay, so why does it matter how he left the country? I'm just asking the same question, but I'm trying to figure out if your answer is it doesn't matter, which I thought was the answer to your first, where you first started, which is it doesn't have to go to the heart of the case. That's correct. So I thought you were saying that the heart of the case is the same as materiality. There's no requirement that an inconsistency go to that heart-of-the-matter issue, so it doesn't, it actually, we don't care. There doesn't have to be a materiality to the departure facts. That's correct. Yes, that's correct. Under the REAL-ID Act, the inconsistency does not have to go to, does not have to, the immigration judge can rely on any inconsistency in making the credibility determination. Any inconsistency. Any inconsistency. That's correct. That's correct. Yes. I got the feeling, I don't know if the IJ made this finding, but I got the feeling particularly when the IJ was talking about the suspiciousness of the hospital records and of the information about the extent of his injuries and so forth, and the fact they were the same date but obviously different documents and signed with signatures that appeared different. That plus the inconsistency of the sister about whether she even had a brother by his name and the inconsistency about how long he spent in the kind of wandering the wilderness of 30 days before he tried to move out of the Cameroons. I got the feeling that the IJ was saying, this whole thing, there is inconsistencies and untruthfulness pervading and it is so pervasive that it simply casts a web on whether this is a fabricated or a manufactured immigration claim. Did the judge ever go that far or did he just look at each individual instance without drawing kind of a bigger conclusion? The immigration judge did make a short finding in his decision that it was a, that the applicant filed a frivolous asylum application. So the immigration judge did make a short finding. On appeal, the board did not affirm that determination because the immigration judge did not provide all of the support that is required for making a frivolous asylum finding. Was it that or, I mean, the BIA assembly reversed that finding. I didn't think the BIA explained why it reversed it. I thought it could have been that the BIA had failed to give adequate notice, or that is the hearing examiner, failed to give adequate notice to the defendant. Not that the finding was wrong substantively, it's just that there was a procedural problem with it. It wasn't that there was a failure to give adequate notice. The immigration judge gave the frivolous asylum application warning at the beginning of the proceedings as they do in all of the asylum hearings, told them that if you file a frivolous asylum application, you will be barred from immigration relief in the future. So it was not that they did not give that particular warning. So why did the BIA reverse that finding? The board has case law which requires that when making an immigration, when making a frivolous asylum application finding, you have to specifically lay out that you gave the warning, the reasons for the finding, and explaining that the applicant was allowed to, was presented with that finding and allowed to provide an explanation for it. That was my point, that the reversal was because the process or the procedure wasn't followed, not that the conclusion was incorrect. That's correct, yes. If there are no further questions... Oh, no, I have a question. Yes. I'm sorry. So you were about to tell us about, even though you think there doesn't have to be a material inconsistency, you were going to tell us that there maybe was a better inconsistency or a more serious inconsistency than the hospital. Weren't you going to tell us more about that or no? Do you have an inconsistency that might be more material even though you think materiality doesn't apply? The immigration judge and the board both looked to the fact that petitioner's witness, who testified that he was her sister, did not include the petitioner's name on her asylum application and that the immigration judge looked to the fact that he caused a question whether or not petitioner and his witness were actually related. And so that, because petitioner alleged that his asylum claim was based on the same facts and the same situation as his sister, the fact that there was inconsistency with whether or not they were related caused the immigration judge concern about whether or not he was related. Thank you. Let me make sure I understand your position on materiality. Let's say we have a situation where the petitioner, there are inconsistencies in the evidence itself. Would it be error under those circumstances for the immigration judge to deny relief based on those inconsistencies? No, it would not. Under the statute and the Real ID Act, the immigration judge can look to any inconsistency in the application to determine whether or not the applicant is credible. There's no case law questioning that at all. In other words, what if you have a trivial inconsistency, but maybe you have several of them, the IJ latches onto those, but they have absolutely nothing to do with the testimony supporting the asylum application. Is it appropriate under those circumstances to deny relief based on lack of credibility? That would, I see that my time is almost up, may I answer? Yes, the immigration judge under the statute can rely on any inconsistency in denying an asylum application. Even if it's immaterial, irrelevant to anything related to the actual claim? Any inconsistency. Here, what's important to focus on is that there are numerous inconsistencies regarding petitioner's application, and so there are numerous grounds on which this court could look to to find that the evidence does not compel the conclusion that the agency aired. Thank you, counsel. Thank you. Hello again. As your honors have been pointing out, there is no dispute between what actually happened as far as persecution of the petitioner and of his family members. His mother, father, and sister were all killed by the government because of their political activities. The petitioner was beaten twice, arrested twice, and detained twice, each time over a two-day period. That was never questioned. It was also never questioned about that the petitioner was not actually a member of the SCNC, but it was imputed, his political opinion, because he was managing the bar, cafe, owned by his brother, who was a SCNC member, and where SCNC members came to hold meetings. I wanted to point out that even though this court, in the unpublished decision, Nah, Zingg v. Holder, 507F Appendix 755, that's a 2013 decision, held, or in that case, this court reversed the Immigration Court's adverse credibility finding where the asylum applicant was unable to recall dates, addresses, locations of children, dates of relatives who were also persecuted. I think that, by analogy, is similar to the case here, although in this case, the petitioner was not inconsistent, but other family members or individuals were inconsistent. I think, by analogy, that shows that the judge was wrong on the board in finding and making that determination. In this case, the asylum officer found that the petitioner was credible, and that's found in Administrative Record 683. The government argued today that the petitioner provided, in essence, all the documents that were used to support the adverse credibility finding. That's not true. The judge relied most heavily on the asylum officer's notes, which were submitted by DHS, by the government, not by the petitioner. I think that's significant in this case. Leading to, is that four seconds? I wasn't able to find an actual decision, Your Honor, about independent and corroborative evidence, other than that this court has held that they have to look at the totality of the evidence, the circumstances, and look at all the evidence. Thank you, counsel. Thank you. Your time is up. Thank you.